IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| buySAFE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:13cv781–HEH |
| | ) | |
| GOOGLE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION
### (Granting a Partial Limited Stay)

This matter is before the Court on Google, Inc.'s ("Defendant") Motion to Stay (ECF No. 46), filed on May 12, 2014. Specifically, Defendant requests that this case be stayed pending completion of a Covered Business Method ("CBM") Review (the Petition for Review and the Review itself) of U.S. Patent No. 8,515,791 ("the '791 Patent"), the asserted patent. The parties have fully briefed the issue, and the Court heard oral argument on June 9, 2014. For the reasons stated herein, the Court grants a partial limited stay.

## I. BACKGROUND

This case involves the parties' allegedly competing products. Both provide a type of guarantee or verification to online shoppers, and consumer behavior information. Plaintiff "sells to Internet retailers a patented service that provides third-party certification and transactional guarantees for online merchants." (Compl. at ¶¶ 2, 9, ECF No. 1.) Plaintiff "has also invented methods for performing systematic analysis of

consumer behavior data to predict consumer demand in relation to the offering of a third-party transactional guarantee." (*Id.* at ¶ 10.)  These methods are covered by the '791 Patent, which issued on August 20, 2013.  (*Id.* at ¶ 11.)

According to the Complaint, in 2011 Defendant launched Google Trusted Stores ("GTS"), which provides "merchants with a trust seal[,] guarantee[s] the purchases of online shoppers," and "collect[s] consumer purchase information." (*Id.* at ¶¶ 12, 16.) Defendant contends that GTS does not offer a guarantee – rather, it provides "consumers with information about online merchants, including seller rating and shipping information, and to help consumers feel confident in their purchases by allowing retailers to display the GTS badge on their website." (Def.'s Reply Br. Supp. Mot. to Stay at 3, ECF No. 77.)  Plaintiff filed suit against Defendant on November 25, 2013, alleging that Defendant is infringing the '791 Patent. (Compl. at ¶ 23.)

The Leahy-Smith America Invents Act ("AIA"), 112 Pub. L. No. 29 (2011), provides for U.S. Patent and Trademark Office ("PTO" or "the Patent Office") Patent Trial and Appeal Board ("PTAB") review of CBM patents upon petition. 35 U.S.C. § 321.  Under the AIA, "a person who is not the owner of a patent may file with the Office a petition to institute a post-grant review of the patent." *Id.* at § 321(a).  Specifically, "[a] petitioner in a post-grant review may request to cancel as unpatentable 1 or more claims of a patent on any ground that could be raised under paragraph (2) or (3) of section 282(b) [35 U.S.C. § 282(b)] (relating to invalidity of the patent or any claim)." *Id.* at § 321(b).

On May 9, 2014, Defendant filed a Petition for Transitional Post-Grant Review of a patent (CBM Review) with PTAB ("the Petition"), seeking to invalidate all claims of the '791 Patent pursuant to 35 U.S.C. § 321. (Def.'s Mem. Supp. Mot. to Stay, ECF No. 47, Ex. 1 thereto). The AIA allows Plaintiff three months from May 9, 2014 to file its response to the Petition. 37 C.F.R. § 42.207(b). Under 35 U.S.C. § 324(c)(1), PTAB has three months after "receiving a preliminary response to the petition" from Plaintiff to determine whether to conduct a CBM Review. Thus, PTAB will have decided whether to conduct a CBM Review no later than six months after May 9, 2014 (or by November 9, 2014). If the Petition is granted, Plaintiff may make a motion to PTAB to amend claims of the '791 Patent, but amendments "may not enlarge the scope of the claims of the patent or introduce new matter." 35 U.S.C. § 326(d).

## II. STANDARD OF REVIEW

"As the movant[] seeking a stay, Defendant[] bear[s] the burden of demonstrating that a stay is warranted." *Segin Sys. v. Stewart Title Guar. Co.*, 2014 U.S. Dist. LEXIS 45595, at *5-6 (E.D. Va. Mar. 31, 2014) (citing *Market-Alerts Pty. Ltd. v. Bloomberg Finance L.P.*, 922 F. Supp. 2d 486, 489-90 (D. Del. 2013)).

The AIA provides that "[i]f a party seeks a stay of a civil action alleging infringement of a patent under section 281 of title 35, United States Code, relating to a transitional proceeding for that patent, the court shall decide whether to enter a stay based on" the following four factors:

> (A) whether a stay, or the denial thereof, will simplify the issues in question and streamline the trial;
> (B) whether discovery is complete and whether a trial date has been set;

3

(C) whether a stay, or the denial thereof, would unduly prejudice the
nonmoving party or present a clear tactical advantage for the moving party;
and
(D) whether a stay, or the denial thereof, will reduce the burden of litigation
on the parties and on the court.

AIA, 112 Pub. L. No. 29 § 18(b)(1) (2011).

Congress could have created an automatic stay of litigation pending CBM Review,

but did not. *See Segin*, 2014 U.S. Dist. LEXIS 45595, at *8. Thus, while a stay may be

appropriate in many circumstances, it is only proper where the AIA § 18(b)(1) factors

weigh in favor of a stay.[1] "The Supreme Court has long recognized that district courts

have broad discretion to manage their dockets, including the power to grant a stay of

proceedings." *Proctor & Gamble Co. v. Kraft Foods Global, Inc.*, 549 F.3d 842, 848–49

(Fed. Cir. 2008).

### III. DISCUSSION

### A. RIPENESS

As an initial matter, the Court finds that the Motion to Stay is ripe for disposition.

At oral argument, Plaintiff relied on *Sunbeam Prods. v. Hamilton Beach Brands, Inc.*,

2010 U.S. Dist. LEXIS 45654 (E.D. Va. May 7, 2010), and *Segin Sys. v. Stewart Title*

*Guar. Co.*, 2014 U.S. Dist. LEXIS 45595 (E.D. Va. Mar. 31, 2014),[2] to argue that the

question of whether to grant a stay is not ripe when a reexamination request has not been

granted. However, the court in *Sunbeam* considered whether to stay litigation pending

---

[1] The Court does not consider Defendant's emphasis on legislative history stating that a stay is
almost always granted while CBM Reviews are pending because "such sentiments are not
reflected in the statutory text." *Segin*, 2014 U.S. Dist. LEXIS 45595, at *8.

[2] For the reasons detailed *infra*, the Court is not persuaded that the reasoning of *Segin* supports
denial of a stay at this time.

*inter partes* reexamination – not CBM Review – of the asserted patents.  CBM Reviews

differ from *inter partes* reexaminations in at least three pertinent ways.

First, courts consider different factors when deciding whether to stay litigation

pending *inter partes* reexamination as opposed to CBM Reviews.[3]  Second, *inter partes*

reexamination can take several years to run its course.  *See Sunbeam*, 2010 U.S. Dist.

LEXIS 45654, at *9 (noting that "the reexamination process, if it is a typical one, would

not conclude for another six years.").  Whereas, CBM Review is statutorily required to be

completed within one year of institution, except that the time may be extended by six

months for good cause.  37 C.F.R. § 42.300(c).  Third, *inter partes* and *ex parte*

reexaminations, which predate the AIA, require a showing of a "substantial new

question" of patentability, which CBM Review does not require.  *See* 35 U.S.C. § 303(a).

Thus, given the differences between *inter partes* reexamination and CBM Review, the

analysis in *Sunbeam* is inapposite.

Furthermore, regardless of whether PTAB grants the Petition and a CBM Review

is ultimately conducted, this Court must apply the AIA § 18(b)(1) factors to determine if

a stay is appropriate at the time the Petition is first filed.  *Market-Alerts*, 922 F. Supp. 2d

---

[3] Specifically,

> The substantial difference between the test set forth in [AIA] § 18(b)(1) and that
> employed by courts in the ordinary patent reexamination context is the inclusion
> of a fourth factor, which requires the court to consider 'whether a stay, or the
> denial thereof, will reduce the burden of litigation on the parties and on the court.'
> [AIA ]§ 18(b)(1)(D).

*Market-Alerts*, 922 F. Supp. 2d at 489-490.

at 490, n.5 (quoting Office Patent Trial Practice Guide, 77 Fed. Reg. 48757 (Aug. 14,

2012)).[4] Therefore, the Court finds that the question of whether to grant a stay is ripe,

and applies the AIA § 18(b)(1) factors at this time.

## B. SCOPE OF STAY

The Court has considered the AIA § 18(b)(1) factors, and in exercising its

discretion finds that they weigh in favor of granting a partial limited stay of proceedings

and motion deadlines.

The partial limited stay will remain in effect pending PTAB's consideration of the

Petition for CBM Review.  Immediately after PTAB decides whether to grant the

Petition, the parties are ordered to notify the Court of PTAB's decision.  If PTAB denies

the Petition, a status hearing will be held within ten days after PTAB's decision to reset

the dates for trial and other proceedings.  However, if PTAB elects to conduct a CBM

Review, the partial limited stay shall be extended, pending the conclusion of the CBM

---

[4] The Court adopts the District Court of Delaware's analysis and conclusion on this issue as follows:

> One preliminary issue is whether the statutory stay analysis set forth in § 18(b) is triggered upon a party's petition for post-grant review or only upon the . . . PTAB's . . . institution of such review. (D.I. 19 at 8; D.I. 22 at 6.) The AIA states that "the court shall decide whether to enter a stay based on [the four enumerated factors]" whenever "a party seeks a stay of a civil action alleging infringement of a patent . . . relating to a transitional *proceeding* for that patent." § 18(b)(1) (emphasis added). Since the PTO has recognized that "the *proceedings* begin with the filing of a petition," the court finds that the relevant stay provisions apply when the petition is first filed. Office Patent Trial Practice Guide, 77 Fed. Reg. 48757 (Aug. 14, 2012) (emphasis added).

*Market-Alerts*, 922 F. Supp. 2d at 490, n.5.

Review.  In that case, a status hearing will be held within ten days after the conclusion of the CBM Review.

The stay is limited with respect to discovery, which will move forward as set forth in the existing Scheduling Order.  In addition, the parties are ordered to meet with Magistrate Judge David J. Novak for another settlement conference no later than August 31, 2014.  It is the Court's understanding that the parties have already met with Judge Novak twice and that progress has been made.  The parties would be best served by continuing settlement negotiations as the Patent Office considers the CBM Review.

In reaching this decision, the Court notes that given how recently the AIA was enacted, there is little or no guidance from the Federal Circuit on how to apply the AIA § 18(b)(1) factors.  District court opinions on the subject are not controlling and are inconsistent, largely due to the discretionary nature of the issue.  Accordingly, the Court bases its decision to grant a partial limited stay, on its analysis of the AIA § 18(b)(1) factors as follows.

## C. AIA § 18(b)(1) Factors

Plaintiff argues that this case is akin to *Segin Sys. v. Stewart Title Guar. Co.*, 2014 U.S. Dist. LEXIS 45595 (E.D. Va. Mar. 31, 2014), where Judge Jackson denied a stay pending a petition for CBM Review.  In *Segin*, it was "difficult to predict the impact of a stay because it is completely unknown whether or not that review will occur." *Id.* at *10. Thus, the court in *Segin* was "unable to determine at th[at] juncture how likely it is that PTAB will conclude that 'it is more likely than not that at least one of the claims challenged in the petition is unpatentable,' a finding that the PTAB must make before

7

granting review." *Id.* at *10-11 (quoting 37 C.F.R. § 42.208(c)).[5] For the reasons that

follow, this Court reaches a different conclusion on the circumstances before it, and finds

that a partial limited stay is warranted.

While not controlling, and factually distinguishable, the *Segin* opinion provides a

helpful benchmark against which this Court can measure its analysis of the AIA §

18(b)(1) factors.

### i. AIA § 18(b)(1)(A)

The Court finds that a stay "will simplify the issues in question and streamline the

trial." AIA § 18(b)(1)(A).

The court in *Segin* found that "the first factor weighs only slightly in favor of

staying the action." *Segin*, 2014 U.S. Dist. LEXIS 45595, at *12-13. Relying on the fact

that "in addition to the patent infringement claim, Plaintiffs have brought a breach of

contract claim" and "Defendants raise invalidity arguments in their Answers that they

have not raised in their CBM petition," the court in *Segin* found that "unless the PTAB

finds every claim of the patent invalid, some invalidity issues will remain" and, thus, any

"simplification of the issues would be only moderate." *Id.* at *11-12. In *Segin*, the

presence of a breach of contract claim weighed against a stay, presumably because that

entire claim would be marginalized while PTAB construed the invalidity claims. Thus,

---

[5] 37 C.F.R. § 42.208(c) states that "[p]ost-grant review shall not be instituted for a ground of
unpatentability, unless the Board decides that the petition supporting the ground would, if
unrebutted, demonstrate that it is more likely than not that at least one of the claims challenged in
the petition is unpatentable."

the issues in *Segin* would not have been significantly simplified by the CBM Review. Here, all of the claims in this litigation will be affected by a CBM Review.

It is evident that a partial limited stay will simplify the issues since every claim asserted in this case is raised in the Petition, and if PTAB grants the Petition, it will address the validity of these claims. The Petition in this case highlights two combinations of references which Defendant contends the Patent Office has never considered: (1) the references the Patent Examiner used to reject the original claims of the '791 Patent, in combination with the allegedly previously withheld U.S. Patent No. 7,644,019 ("the '019 Patent") which arguably renders all of the claims invalid as obvious; and (2) a new prior art reference, U.S. Patent No. 7,228,287 ("the '287 Patent") by Samson, which may render the claims obvious when combined with the withheld '019 Patent.[6]

In the first of these combinations of references, Defendant alleges there is relevant prior art (the '019 Patent), which was not before the PTO in the prosecution of the '791 Patent. According to Defendant, PTO has never considered whether combining the known prior art, the guaranty concept, with the known prior art consumer research concept is valid.[7] Irrespective of whether this prior art was intentionally or

---

[6] Plaintiff did not address the second combination of references on brief or at oral argument. Thus, the Court only considers the first combination of references submitted by Defendant in its Petition.

[7] Specifically, Defendant contends that at the time Plaintiff was litigating the '019 Patent in Delaware, it was also prosecuting the application that led to the '791 Patent. During prosecution of the '791 Patent, the applicants initially argued the prior art failed to disclose the monitoring of post-transaction activity. (Def.'s Mem. Supp. Mot. to Stay, Ex. 4 thereto, November 4, 2011 Amendment, at 6.) The Patent Office rejected the pending claims twice. (*Id.* Ex. 5 thereto,

unintentionally withheld, it reveals that there may have been a similar patent that provides both consumer research and retailer guaranty, potentially rendering the '791 Patent unpatentable. This is an issue that the PTO or PTAB has not had the opportunity to address.

Plaintiff contends that a stay would not simplify the issues because a CBM Review would be duplicative of the prosecution of the '791 Patent, in which PTO already considered whether it was obvious in view of cumulative prior art.[8] Plaintiff further argues that given the cumulative nature of the prior art, it is unlikely PTAB will grant the Petition. Specifically, Plaintiff contends the '019 Patent is cumulative of U.S. Patent No. 7,343,339 ("the '339 Patent"), "Electronic Bond and Guaranty Business Method," and an application for "A Method and System Providing a World E-Commerce Exchange" (WO 02/25400 "the 400 application"), which are similar to the '019 Patent in that they claim a type of guaranty for an online transaction like the '019 Patent, but do not analyze consumer behavior in relation to an online sales transaction. The '339 Patent and the 400

August 23, 2011 Office Action; *Id.* Ex. 6 thereto, March 1, 2012 Office Action.) Plaintiff then amended its claims to add the limitation of determining whether to accept the obligations of a party to the claimed sales transaction. (*Id.* Ex. 7 thereto, August 17, 2012 Amendment.) When Plaintiff added that limitation, it told the Patent Office the prior art did not disclose the newly-added limitations. (*Id.* Ex. 8 thereto, June 11, 2012, Applicant-Initiated Interview Summary; *Id.* Ex. 7 thereto, August 17, 2012 Amendment after Final.) The Patent Office then allowed the claims. (*Id.* Ex. 9 thereto, May 21, 2013 Applicant-Initiated Interview Summary.) Defendant argues Plaintiff failed to disclose to the PTO that the claim limitation added to overcome rejection came directly from the '019 Patent or that the '019 Patent was the subject of litigation in Delaware.

[8] In an attempt to persuade the Court that a stay will not simplify the issues in this case, Plaintiff emphasizes that evidence of Defendant's copying Plaintiff's product is a secondary consideration of nonobviousness. *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1368-1369 (Fed. Cir. 2013). However, obviousness is not before the Court at this stage of litigation.

application were considered during prosecution of the '791 Patent. However, it appears that Plaintiff's new argument that the '019 Patent is cumulative prior art is contrary to its previous representations to the PTO. (Def.'s Reply Br. Supp. Mot. to Stay, Ex. 21 thereto, Pl.'s Resp. Def.'s First Requests for Admission, at Nos. 84-89; *Id.* Ex. 18 thereto, Dep. Tr. of Jeffrey A. Grass, at 281:16-284:3, 293:19-294:1; Def.'s Mem. Supp. Mot. to Stay, Ex. 14 thereto, Pl.'s Resp. Def.'s First Interrog., at No. 7.) Thus, it remains clear that PTAB's consideration of the purportedly withheld prior art bears on this critical issue, and a stay would simplify important issues.

This is particularly apparent because in the Delaware litigation between buySAFE and Google over the '019 Patent, the District Court of Delaware found that the '019 Patent was invalid as claiming unpatentable subject matter pursuant to 35 U.S.C. § 101. *buySAFE, Inc. v. Google Inc.*, 964 F. Supp. 2d 331, 337 (D. Del. 2013). The court also construed the terms "guaranty" and "transaction performance guaranty" (terms that are also in the '791 Patent). *buySAFE, Inc. v. Google Inc.*, 2013 U.S. Dist. LEXIS 105603, at *6-11 (D. Del. July 29, 2013). Given that the '019 Patent was unpatentable, there is a reasonable likelihood that the '791 Patent is similarly unpatentable since both of these patents, though not directly related, have key concepts and terms in common. Furthermore, both patents disclose methods of providing a guaranty for some or all of a party's obligations in an online transaction. (*See, e.g.,* Def.'s Mem. Supp. Mot. to Stay, Ex. 3 thereto, the '791 Patent, and Ex.10 thereto, the '019 Patent.)

The validity of the claims in the '791 Patent, in light of the allegedly withheld prior art, will also affect Defendant's inequitable conduct defense, which appears to be

central to the litigation. After CBM Review, some or all of the claims could be cancelled or amended under 35 U.S.C. § 326(d). If the CBM Review results in some claims being amended or cancelled in view of the withheld '019 Patent, this result would demonstrate that the '019 Patent was material to the patentability of the '791 Patent. Defendant's inequitable conduct defense requires, among other things, a showing that the withheld prior art was "material" to patentability of any claims of the '791 Patent. *See Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011). Materiality can be shown by establishing that "but for" the withholding of the prior art reference, the Patent Office would not have allowed the claims of the patent. *Id.* at 1291-92. Thus, a CBM Review will likely simplify the principal defense in this case.

For the foregoing reasons, the Court finds that a partial limited stay would simplify some of the important issues in this case.

### ii. AIA § 18(b)(1)(B)

The Court now turns to AIA § 18(b)(1)(B). The court in *Segin* found that AIA § 18(b)(1)(B) was neutral with regard to whether a stay should be granted. There, the trial date had been set, discovery had only recently begun, and claim construction briefing was due on the same day as the deadline for PTAB's decision. *Segin*, 2014 U.S. Dist. LEXIS 45595, at *13-14. The court noted that "although preparations for the *Markman* hearing will have been substantially completed by [the time PTAB decides whether to grant the petition] . . . the parties' preparation and briefing for that hearing will overlap to some extent with the efforts they must undertake before the PTAB." *Id.* at *14.

Here, while a trial date has been set, it was scheduled early in the proceedings as is customary in this District. Claim construction briefs have been filed, but a number of deadlines remain. For example, discovery is ongoing, but summary judgment motions have not been filed. Thus, this case is approaching its most critical stages. Many of the issues left to be addressed – claim construction, infringement, and damages – may be mooted by the CBM Review. Like in *Segin*, there will likely be overlap between preparations for the *Markman* hearing and proceedings before PTAB.

Significantly, if PTAB finds any of the claims invalid, that determination will govern, regardless of this Court's ultimate determination on validity. *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1344 (Fed. Cir. 2013) (holding a PTO decision of invalidity is binding even post-trial "because Congress has expressly delegated reexamination authority to the PTO under a statute requiring the PTO to cancel rejected claims, and cancellation extinguishes the underlying basis for suits based on the patent."). The binding nature of PTAB's decision weighs in favor of granting a stay.

While the Court finds that these circumstances support granting a limited stay, discovery and settlement discussions will move forward, in the interest of keeping the case moving to a reasonable extent while PTAB considers the Petition.

### iii. AIA § 18(b)(1)(C)

Next, the Court finds that a partial limited stay will not "unduly prejudice [Plaintiff] or present a clear tactical advantage [to Defendant]" under AIA § 18(b)(1)(C). As the District Court of Delaware noted in *Market-Alerts*, 922 F. Supp. 2d at 494, "the potential for delay does not, by itself, establish *undue* prejudice." (emphasis in the

original). "[I]n determining whether a plaintiff might be unacceptably prejudiced by a stay, the court turns to additional considerations including the timing of the stay request, the timing of the administrative review request, the status of the review proceedings, and the relationship between the parties," *e.g.*, whether the parties are marketplace competitors. *Id.*

The Court finds that the timing of Defendant's Petition and Motion to Stay weigh in favor of a partial limited stay. "A petition for a post-grant review may only be filed not later than the date that is 9 months after the date of the grant of the patent or of the issuance of a reissue patent (as the case may be)." 35 U.S.C. § 321(c). The '791 Patent was issued on August 20, 2013. (Compl., ECF No. 1, Ex. 1 thereto.) While Defendant could have filed its CBM Petition earlier in this litigation, it was timely filed on May 9, 2014 and done so within a reasonable amount of time.[9] Three days later, Defendant promptly filed its Motion to Stay on May 12, 2014. There is a reasonable likelihood that the Petition will be granted for the reasons discussed herein – especially in light of Defendant's representation to the Court that 78% of CBM Petitions have been granted, to date. If the Petition is denied, the case will be promptly rescheduled for trial, minimizing any prejudice to Plaintiff.

The Court now turns to the relationship between the parties. Plaintiff contends that Defendant copied its product. Therefore, Plaintiff concludes that the parties have a

---

[9] Defendant only has one opportunity to petition for CBM Review. 35 U.S.C. § 32. Thus, the Court notes the importance for Defendant to thoroughly, and not hastily, compose its petition.

competitive relationship. For the reasons explained *supra*, this Court does not consider the alleged copying at this stage of the case.

The court in *Segin* found that AIA § 18(b)(1)(C) "weighs strongly in favor of denying a stay" after finding the parties were direct competitors. *Segin*, 2014 U.S. Dist. LEXIS 45595, at *18, 20-21. Unlike in *Segin*, the parties are not direct competitors here, and that weighs in favor of granting the stay. *See VirtualAgility, Inc. v. Salesforce.com, Inc.*, 2014 WL 94371, at *6 (E.D. Tex. Jan. 9, 2014) (finding stay pending CBM Review inappropriate where parties were direct competitors). The parties may or may not be competitors with respect to consumer protection. However, they are not competitors on methods of monitoring and analyzing consumer behavior in online sales transactions because up until the filing of its Opposition Brief to the Motion to Stay, Plaintiff admitted it never marketed or sold a product or service covered by the '791 Patent. (Def.'s Reply Br. Supp. Mot. to Stay, Ex. 18 thereto, Dep. Tr. of Jeffrey A. Grass, at 281:16-284:3, 293:19-294:1.) Thus, there is insufficient evidence at this point that the parties are direct competitors with respect to the '791 Patent.

The Court is sensitive to Plaintiff's concerns about the financial losses it may incur because of a stay. (Pl.'s Br. Opp. Def.'s Mot. to Stay, Ex. 1 thereto, Dec. of Jeffrey A. Grass, at ¶¶ 1, 6-7.) However, Plaintiff's testimony of past financial loss is not dispositive on this factor because the testimony covers a time period before the '791 Patent was issued. Thus, the deposition testimony does not necessarily show prejudice as a result of a stay of the '791 Patent litigation. To limit any resulting prejudice to

15

Plaintiff, the Court will order the parties to continue the pace of discovery during the CBM Review process.

Also of significance in *Segin* was "[t]hat Defendants may have two separate opportunities in two separate forums to challenge the validity of the Plaintiffs' patent [and that] raise[d] a concern of an unfair tactical advantage, [which would] giv[e] them two bites of the apple as to a central defense" where "Defendants have not raised all of their invalidity defenses before the PTAB." *Segin*, 2014 U.S. Dist. LEXIS 45595, at *20-21. Unlike in *Segin*, Defendant raised claims in its Petition that bear on the central invalidity defense in this case, inequitable conduct.

### iv. AIA § 18(b)(1)(D)

Lastly, the court in *Segin* held that the fourth factor "weighs slightly in favor of a stay," drawing heavily on its analysis under the first factor. *Segin*, 2014 U.S. Dist. LEXIS 45595, at *22-23. Similarly, this Court relies on its analysis under AIA § 18(b)(1)(A) to support its conclusion under AIA § 18(b)(1)(D), and finds that a partial limited stay "will reduce the burden of litigation on the parties and on the court." A partial limited stay will spare the burden of arguing the same issues of validity of the claims and the inequitable conduct defense twice. AIA § 18(b)(1)(D). A partial limited stay will also reduce the Court's burden by allowing PTAB to determine the validity of the '791 Patent claims and the materiality of the allegedly withheld '019 Patent, which may support Defendant's inequitable conduct defense.

The Court recognizes that the AIA § 18(b)(1)(D) factor "was included, in part, to ease the movant's task of demonstrating the need for a stay," and finds that AIA §

18(b)(1)(D) weighs strongly in movant's favor here. *Market-Alerts*, 922 F. Supp. 2d at

489-490.

## IV. CONCLUSION

Based on the foregoing analysis, a partial limited stay will be granted under AIA §

18(b)(1), pending disposition of the CBM Petition.

An appropriate Order will accompany this Memorandum Opinion.

                                                        /s/
                                                _____
                                                Henry E. Hudson
                                                United States District Judge

Date: June 16, 2014
Richmond, Virginia

17